## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Alpine Glass, Inc.,                 Civil No. 06-4213 (DSD / SRN)

        Plaintiff,

    v.                   **REPORT & RECOMMENDATION**

American Family Insurance Co.,

        Defendant.

---

      Charles J. Lloyd, Livgard & Rabuse, P.L.L.P., 2520 University Ave. S.E., Ste. 202, Minneapolis, MN 55414, for Plaintiff.

      John M. Bjorkman, Larson King, LLP, 2800 Wells Fargo Place, 30 East Seventh Street, St. Paul, MN 55101, for Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

      This matter comes before the undersigned United States Magistrate Judge on Plaintiff's Motion to Dismiss Defendant's Counterclaim (Doc. No. 7). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, the Court recommends that the motion be granted.

## I.    FACTUAL AND PROCEDURAL HISTORY

      Alpine Glass, Inc. ("Alpine") filed this declaratory judgment action in state court seeking a declaration that the numerous claims it asserts against American Family–originally the claims of individuals who are Alpine's customers and American Family's insureds that American Family did not pay the full amount Alpine charged for automobile glass repairs ("the individual 'short pay' claims")–should be consolidated in arbitration under applicable Minnesota law. Alpine asserted that there was no dispute that the individual claims were required to be arbitrated

under Minn Stat. § 65B.525 ("Minnesota's No-Fault Arbitration Statute") and, therefore, that the only issue for the court was the consolidation of those numerous claims.  American Family removed on the basis of diversity.  (Doc. No. 1.)

American Family's Answer included a "Counterclaim" alleging that its policies "prohibit any assignment without American Family's consent," which it states that it did not provide. (Counterclaim ¶¶ II-III.)  American Family also asserted that Alpine released the individual policyholders before Alpine obtained any purported assignment from them, leaving them with nothing to assign.  (Id. ¶ IV.)  American Family thus sought to dismiss Alpine's Complaint for lack of what it termed "standing."  (Id. ¶ V.)  In the alternative, it sought a declaratory judgment that Alpine must separately arbitrate each claim.

Alpine now moves to dismiss the Counterclaim on either of two grounds:  (1) pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, or (2) pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

## II.    DISCUSSION

Alpine argues that American Family is attempting to circumvent mandatory arbitration because American Family's self-styled "Counterclaim" is actually "nothing more than a creatively labeled defense to Alpine's claim and as such must be arbitrated."  (Mem. at 1.) Alpine argues this Court would lack subject matter jurisdiction over American Family's Counterclaim because Minnesota law requires that all auto-glass replacement claims and all defenses to such claims be resolved in arbitration.  Alpine also contends that the contractual anti-assignment provision in American Family's policies applies only to assignments of coverage, not to assignments of post-loss policy proceeds.  (Reply Mem. at 5-8.)

American Family counters that its counterclaim properly raises "the issue of whether

2

Alpine holds a valid and enforceable assignment for each of the claims it now seeks to consolidate." (Mem. at 1; id. at 2 (stating that it "challenges the existence and validity of Alpine's claimed assignments")).) It denies that it is "attempt[ing] to skirt arbitration" and claims that it seeks "to determine what claims, if any, Alpine has to arbitrate." (Mem. at 3.) It claims that because arbitrators of no-fault claims "are limited to deciding issues of fact," the courts retain jurisdiction to decide issues of law such as "the existence and validity of Alpine's purported assignments." (Id. at 3-4.)

American Family has thus raised, by way of what it has denominated as a "Counterclaim," the issue of whether Alpine has "standing" to pursue the claims of its individual customers (and American Family's insureds). American Family's argument presents two separate issues: (1) whether Alpine lacks "standing" because Alpine released the individual policyholders before obtaining any assignment, thereby leaving them with nothing to assign to Alpine, and (2) whether Alpine lacks "standing" because American Family did not provide the consent it claims was required under the policies at issue before the individual policyholders could assign their claims to Alpine. Because these two prongs of American Family's "standing" argument differ in terms of how they must be resolved under Minnesota's No-Fault Arbitration Statute, this Court will address them separately.

### A.    Under Minnesota Law, Certain No-Fault Cases Must Be Submitted To Binding Arbitration

The Minnesota legislature directed the Minnesota courts to "provide for the mandatory submission to binding arbitration of all cases at issue where the claim at the commencement of arbitration is in an amount of $10,000 or less against any insured's reparation obligor for no-fault benefits or comprehensive or collision damage coverage." Minn. Stat. § 65B.525, subd. 1. There seems to be no dispute here that the individual claims at issue here must therefore be

arbitrated.  Where such a claim is subject to arbitration, this Court lacks subject matter

jurisdiction.  Illinois Farmers Ins. Co. v. Glass Service Co., 683 N.W.2d 792, 800 (Minn. 2004).

Minnesota's No-Fault Arbitration Statute does not speak precisely in terms of "defenses,"

"affirmative defenses" or "counterclaims."  The rules promulgated pursuant to that statute do

provide, however, that "the respondent shall serve a response to the [claimant's] petition setting

forth all grounds upon which the claim is denied."  Minn. R. No-Fault Arb. 5(f).  This would

appear to reach at least any defenses to those claims, if not also affirmative defenses and

counterclaims.

The Minnesota Supreme Court has ruled, however, that legal issues such as the

interpretation of the law are for the courts.  In the area of automobile reparation, which is

governed extensively by statute, "arbitrators are limited to deciding issues of fact, leaving the

interpretation of the law to the courts."  Johnson v. American Family Mut. Ins. Co., 426 N.W.2d

419, 421 (Minn. 1988) (noting need for consistency in the interpretation of the No-Fault Act).

Here, American Family contends that the issues it has raised should be decided by this

Court before the individual or consolidated claims are sent to arbitration because (1) those issues

are raised by a "Counterclaim," which is ostensibly separate from the arbitrable claims of

Alpine, (2) those issues raise a question of "standing," which is presumably a jurisdictional issue

separate from the merits, and (3) those issues present legal questions for the courts, not fact

issues for the arbitrators.  This Court will address each argument separately.

**1.      American Family's "Counterclaim"–Which Seeks A Declaration That
It Is Not Liable On Alpine's Claim–Is Not In The Nature Of A
Conventional Counterclaim**

Minnesota's No-Fault Arbitration Statute does not expressly address whether

"counterclaims" must be arbitrated.  But as Alpine points out, American Family's

"counterclaim" does not seek damages.  Rather, as American Family itself now frames the relief

it seeks, the counterclaim "seeks a declaration concerning the existence and validity of Alpine's

claimed assignments and therefore Alpine's standing to bring a claim for consolidation."  (Mem.

at 5.)  More precisely, the Answer and Counterclaim in fact sought a "judgment" dismissing

"plaintiff's Complaint with prejudice and declaring and adjudging that Alpine does not hold any

valid assignments and lacks standing to pursue any claims."  (Answer and Counterclaim at p. 5,

Doc. No. 3.)

        The Court first notes that American Family's Counterclaim is not a pure permissive

counterclaim in the usual sense–that is, it is not a claim by the defendant against the plaintiff

unrelated to plaintiff's claim against the defendant except for the commonality of parties.  See

Fed. R. Civ. P. 13(b) (permitting counterclaims that do not arise "out of the transaction or

occurrence that is the subject matter of the opposing party's claim"); 6 Wright et al., Federal

Practice and Procedure § 1403 (2d ed. 1990) ("Any claim that a defendant has against plaintiff . .

. may be asserted as a counterclaim.").  Nor is it even in the nature of a compulsory

counterclaim–that is, a claim by a defendant against the plaintiff that is separate from plaintiff's

claim but that arises out of the same transaction or occurrence.  See Fed. R. Civ. P. 13(a)

(permitting counterclaims that arise "out of the same transaction or occurrence that is the subject

matter of the opposing party's claim").[1]

        Rather, what American Family appears, in effect, to seek is a judgment on the merits that

---

        [1] Although there is no absolute rule prohibiting a counterclaim that seeks only
declaratory relief, "when the request for declaratory relief brings into question issues that already
have been presented in plaintiff's complaint and defendant's answer to the original claim, a party
might challenge the counterclaim on the ground that it is redundant and a decision on the merits
of plaintiff's claim will render the request for a declaratory judgment moot."  6 Wright et al.,
Federal Practice and Procedure § 1406, at p. 33 (2d ed. 1990).

it is not liable on Alpine's claim (or claims, depending on whether the individual claims are consolidated). Such relief seems to be either in the nature of a defense, which seeks to directly negate the requisite elements of Alpine's claim, or perhaps in the nature of an affirmative defense, which does not challenge the elements of the plaintiff's claim, but nevertheless asserts a basis for precluding liability on that claim. See 5 Wright & Miller, Federal Practice and Procedure § 1270, p. 558 & § 1271 (addressing distinction between "negative defenses that directly contradict elements of the plaintiff's claim for relief" and "an avoidance or affirmative defense," which defeats a plaintiff's claim even if the plaintiff proves the elements for relief) (3d ed. 2004).[2]

In either case, American Family's "counterclaim" is, at bottom, that it is not liable on Alpine's claim against it. But "[a] defendant in an arbitration under the No-Fault Act is required to set forth in its response to the plaintiff's petition 'all grounds upon which the claim is denied.' Minn. R. No-Fault Arb. 5(f)." Alpine Glass, Inc. v. Illinois Farmers Ins. Co., 2006 WL 3486996, *7 (D. Minn. Dec. 4, 2006). Accordingly, American Family's "Counterclaim" appears to raise matters that the Minnesota legislature intended to be resolved by arbitration. Cf. id., 2006 WL 3486996, at *9 (concluding that certain of the insurer's counterclaims were "really not claims but defenses" that therefore "must be arbitrated"). Nevertheless, in light of the fact that neither the arbitration statute nor the implementing rules expressly address "counterclaims," this Court does not rest its decision entirely on the distinction between defenses and counterclaims.

---

[2] Interestingly, Defendant's Answer–independent of its "Counterclaim"–states what appears to be an affirmative defense of lack of standing. (Answer ¶ XVI (providing that American Family "[s]tates affirmatively that Alpine, absent a valid assignment from an American Family policyholder, lacks standing to pursue any claims").)

**2.      American Family's "Counterclaim"–Which Argues Alpine Lacks
"Standing" To Pursue Its Customers' Individual Claims–Does Not
Raise Genuine Issues Of Standing**

To evade the reach of the No-Fault Arbitration Statute, American Family also contends

that its Counterclaim presents a question of "standing."  American Family first asserts that

"Alpine has not met its burden of proving the existence of a single assignment."  (Mem. at 6.)

American Family then asserts that its counterclaim "seeks a declaration concerning whether

Alpine was assigned any rights against American Family," an issue which it asserts "goes to

standing and Alpine's right to pursue a claim for declaratory relief."  (Id. at 7 (explaining that

"[t]o the extent the assignee had no loss and therefore no claim against American Family there

was nothing to assign and Alpine has nothing for this Court to consolidate").)  In short,

American Family's entire argument thus asserts that Alpine lacks "standing," which American

Family presumably suggests is a jurisdictional issue separate from the merits and thus for the

courts rather than arbitrators.

American Family's Counterclaim does not, however, appear to raise a  true "standing" or

other jurisdictional issue clearly separable from the merits.  Standing usually addresses the

question of whether a plaintiff has suffered an injury in fact that was caused by defendant's

conduct and that can be remedied by judicial process.  Steel Co. v. Citizens for a Better

Environment, 523 U.S. 83, 102-03 (1998) (noting that Court has always taken issue of whether a

party "has standing to sue" to mean "cases and controversies of the sort traditionally amenable

to, and resolved, by the judicial process," which requires at least (1) "an 'injury in fact,'" (2)

"causation–a fairly traceable connection between the plaintiff's injury and the complained-of

conduct of the defendant," and (3) "redressability–a likelihood that the requested relief will

redress the alleged injury").

Here, the issue raised by American Family is whether Alpine can pursue the claims that originally belonged to Alpine's individual customers (and American Family's individual insureds). But there does not appear to be any question that those individual customers, had they not assigned their rights to Alpine, would have had standing to bring their claims against American Family. See Alpine Glass, Inc. v. Illinois Farmers Ins. Co., 2006 WL 3486996, *6 (D. Minn. Dec. 4, 2006) (noting that if individual insured submitted repair bill to insurer, "there is no question that [the individual's] claim would have to be arbitrated under Minnesota's No-Fault Act" and that the individual's "assignment of his claim to Alpine does not change that fact"). Rather, the only question American Family now raises is whether Alpine, having performed the work for those customers and billed American Family for that work, may bring those claims for the difference between what Alpine charged and what American Family paid.[3]

This raises at most an issue of the validity and effect of the assignment of those claims to Alpine, an issue that could perhaps loosely be deemed one of "contractual standing." Cf. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 97 (1998) (distinguishing question of "*statutory* standing," that is, whether plaintiff falls within the scope of a statutory cause of action, from true standing issue of "whether there is case or controversy [sic] under Article III"). But the Supreme Court thus noted that the term "standing" has been improperly applied to a broad array of questions that do not present true jurisdictional questions. Id. at 97 n.2 (distinguishing "Article III requirement of remediable injury in fact" from "the statutory standing

---

[3] The Court notes that American Family's present "standing" argument seems inconsistent with the underlying facts. In the midst of its argument that Alpine lacks standing because it "released the American Family policyholder" before performing any work, American Family admits it paid Alpine–not the insureds with which American Family had a contractual obligation to pay–for that work. (Mem. at 2 ("American Family, consistent with its price list, paid Alpine.")). Alpine thus contends that American Family has now waived "any objection that it may have to the assignments." (Mem. at 5.)

inquiry" which may overlap with "the merits inquiry").  But this Court need not resolve such

thorny jurisdictional issues because Minnesota's No-Fault Arbitration Statute does not expressly

exclude standing issues from arbitration and, more importantly, the basis of American Family's

claim, regardless of how it is labeled, is best resolved in arbitration under that statute.

> **3.     American Family's "Counterclaim"–Which It Argues Raises A
> "Legal" Issue For The Courts–Is Largely Subject To Arbitration
> Under Minnesota's No-Fault Arbitration Statute**

Finally, American Family claims that the "standing" questions it presents in its

"Counterclaim" raise legal issues that are exclusively for the courts, not fact issues for

arbitration.  (Mem. at 7.)  American Family relies on the Minnesota Supreme Court's decision in

Johnson v. American Family Mut. Ins. Co., 426 N.W.2d 419 (Minn. 1988).  (Id. at 3.)  As the

Minnesota Court of Appeals clarified, however, the decision in Johnson regarding legal versus

factual issues "means simply that, although arbitrators must interpret the no-fault statutes, their

interpretations are subject to judicial review."  Great West Cas. Co. v. State Farm Mut. Auto.

Ins. Co., 590 N.W.2d 675, 677 n.1 (Minn. App. 1999).  Accordingly, the distinction between

legal and factual issues does not define the boundary between what is arbitrable and what is not,

it defines the boundary between which issues decided by arbitrators are subject to *de novo*

judicial review and which issues are conclusively determined by arbitrators.  See id.

As the Minnesota Supreme Court subsequently explained, the rules it adopted to govern

no-fault arbitrations authorize "arbitrators in no-fault cases where the claim is for less than

$10,000 to 'grant any remedy or relief deemed just and equitable.'"  Weaver v. State Farm Ins.

Co., 609 N.W.2d 878, 882 (Minn. 2000) (quoting Rule 32, Rules of Proc. for No-Fault Arb.).

Moreover, "[t]o grant relief, arbitrators must apply the law to the facts they have found."  Id.

(citing Great West Cas. Co.).  To achieve the consistency that the Minnesota Supreme Court

sought in <u>Johnson,</u> the courts "review de novo the arbitrator's legal determinations necessary to granting relief." <u>Id.</u>  In sum, "when called upon to grant relief, an arbitrator need not refrain from deciding a question simply because it is a legal question." <u>Gilder v. Auto-Owners Ins. Co.,</u> 659 N.W.2d 804, 807 (Minn. App. 2003) (discussing <u>Weaver</u>).

In short, the issues American Family raises–whether they be viewed as defenses, affirmative defenses, or issues of standing and regardless of their being raised via a "Counterclaim"–are not beyond the reach of the mandatory arbitration statute simply because they are labeled "legal" rather than "factual."[4]  This is perhaps particularly true where the issues American Family raises are so intertwined with the merits of Alpine's claim that requiring courts to decide American Family's "Counterclaim" while compelling arbitration of Alpine's claim would add only additional complexity, time and expense to what the legislature presumably intended to be a simplified and streamlined process.[5]

---

[4] American Family relies on <u>Alpine Glass, Inc. v. Illinois Farmers Ins. Co.,</u> 2006 WL 3486996 (D. Minn. Dec. 4, 2006), for the proposition that the issue of "the existence and validity of an assignment is an issue for the court." (Mem. at 4 n.1.)  But there the court did not cite or rely on the body of Minnesota law clarifying the distinction in <u>Johnson</u> between legal and factual issues.  Moreover, there the court was addressing whether an "insured can assign the proceeds of her insurance policy," 2006 WL 3486996 at *8, an issue that this Court agrees is legal in nature and which it thus separately addresses and decides in Section II.B.  Here, the issue of assignment is much more factual as it simply questions whether and when the individual insureds in fact assigned their claims to Alpine, and does not raise the question of whether the law recognizes that such an assignment, despite a generic contractual anti-assignment clause, is nonetheless valid under the law.

[5] Defendant's reliance on <u>Life Rehab Serv., Inc. v. Allied Prop. & Cas. Ins. Co.,</u> 2006 WL 91334 (D. Minn. Jan. 6, 2006), is misplaced.  There, although the plaintiffs were providers of services to individuals insured by defendants, the plaintiffs claimed that defendants had ignored the assignments by the individual insureds to the plaintiffs and thus continued to pay benefits directly to those individuals. <u>Id.</u> at *1.  The court declined to dismiss plaintiffs' claims for lack of subject matter jurisdiction under the No-Fault Arbitration Statute, holding that "the recovery they seek is not within the overall scope of section 65B.525." <u>Id.</u> at *2.  The court distinguished <u>Illinois Farmers Ins. Co.</u> on the grounds that the respective "claims differ markedly." <u>Id.</u>  In <u>Illinois Farmers,</u> the plaintiff "had accepted payment in the form of

Moreover, even assuming that the Minnesota Supreme Court in <u>Johnson</u> intended to withhold certain legal issues from arbitrators in the first instance, rather than simply to ensure *de novo* judicial review of such issues, the particular standing arguments American Family raises do not appear to involve construction and interpretation of either the No-Fault Act or, with one exception, the insurance policies at issue.[6]  Accordingly, the issues American Family presently raises are not the kind of "legal" issues that are reserved for the courts rather than arbitrators. <u>See</u> <u>Johnson</u>, 426 N.W.2d at 421 (noting that "consistency mandates that the court interpret the no-fault statutes").

Finally, this result seems consistent with the basic legislative intent to remove no-fault claims from the judicial system.  A contrary result would permit, and further encourage, the evasion of the method of dispute resolution chosen by the legislature.

-----

assignments from the insureds" and the insurer "had honored the assignments and paid the insurance proceeds directly to" the plaintiff assignee, such that the cause of action was that the insurer "systematically underpaid the underlying claims." <u>Id.</u> at *3.  In <u>Life Rehab</u>, in contrast, the plaintiffs did "not challenge the amount of moneys paid under the assignments." <u>Id.</u>  Thus, the issue was not "about whether benefits should be paid, or the amount of benefits paid, but to whom they should be paid," and thus fell outside the scope of the statute.  Here, as in <u>Illinois Farmers</u> but unlike as in <u>Life Rehab</u>, American Family has paid the plaintiff rather than the individual insureds and the dispute concerns the amount of benefits paid.  Although the court in <u>Life Rehab</u> also separately noted that the issue it addressed–"the validity of the alleged assignments and notification of assignment"–was a question of law, <u>id.</u> at *4, there the question arose separate from any issues indisputably subject to arbitration.  Moreover, although American Family now claims Alpine lacks standing to pursue the "individual short-pay claims" on the grounds that the individual insureds never assigned any right to payment to Alpine, American Family–having already made at least partial payments to Alpine–seems to have recognized Alpine's entitlement to payment in principle if not in amount–and thus also to have recognized Alpine's "standing" (in American Family's vocabulary) by doing so.

[6]  The exception is American Family's argument that its policies prohibit the assignments on which Alpine premises its claims.  While this argument presents an issue of law for the courts, this Court rules that such anti-assignment clauses prohibit only the assignment of coverage, not the assignment of post-loss policy proceeds.  <u>See infra</u> Section II.B.

**B.      The Policies' Alleged Anti-Assignment Provision Prohibits Only The Assignment Of An Insured's Right To Coverage, Not A Post-Loss Assignment Of Proceeds**

In the second prong of American Family's standing argument, it separately asserts that any purported assignments to Alpine were prohibited by the policies, which it claims contain an anti-assignment clause requiring American Family's consent.  (Mem. at 8.)  American Family thus asserts that its Counterclaim "seeks a declaration that any assignment to Alpine violates the American Family policy," which it claims is another issue of Alpine's standing and thus one properly for this Court.  (Id.)

This Court agrees that the issue is properly one for the court, but one on which American Family cannot prevail.  While American Family argues that any assignment by the policyholders to Alpine violates the policies based on the alleged lack of American Family's consent to such assignments, the argument rests on the assumption that the policies did in fact contain an anti-assignment prohibition that applies to the type of assignment at issue here.  "The law of Minnesota . . . has long distinguished between the assignment by an insured of its right to *coverage* under an insurance policy and the assignment by an insured (after a loss) of its right to *proceeds* under an insurance policy."  Alpine Glass, Inc. v. Illinois Farmers Ins. Co., 2006 WL 3486996, *2 (D. Minn. Dec. 4, 2006) (emphases in original) (citing line of authority dating from 1950 to 1993).  "In general, courts hold that only the former is invalid under an anti-assignment clause in an insurance policy."  Id.  Accordingly, if an insurer wishes to "overcome a half century of caselaw distinguishing between the assignment of coverage and the assignment of proceeds," it must "use clearer language."  Id. (dismissing insurer's counterclaims "based on the alleged invalidity of the assignments by Alpine customers of the proceeds of their" insurance policies).

Here, there appears to be no issue of the individual policy-holders having assigned their coverage under their policies.  Rather, Alpine asserts that those individuals simply assigned to it their right to post-loss proceeds under the policies.  Although American Family claims that the anti-assignment provision applies, it does not even attempt to explain how the language applicable here would differ from the usual anti-assignment clause so as to properly establish that such a provision would prohibit the assignment of post-loss proceeds.  In fact, it appears that the policies at issue are not even part of the record so as to permit this Court's determination of whether the anti-assignment clause differs from that usually included in such policies.  Accordingly, this prong of American Family's Counterclaim must be dismissed.

## III.    CONCLUSION

American Family's "Counterclaim" raises issues that, with one exception, must be arbitrated.  The arbitrable issues do not present true jurisdictional questions of standing, but rather are more in the nature of defenses–in terms of the No-Fault Arbitration Rules, "grounds upon which the claim is denied"–which American Family must submit to arbitration.  More importantly, arbitrators are not strictly prohibited from addressing all legal issues.  Accordingly, the courts lack jurisdiction over such issues.  Although this Court must therefore dismiss the "Counterclaim," American Family is free to pursue the underlying arguments in arbitration. With respect to the one issue that is properly before this Court, American Family has failed to establish that the anti-assignment clause it asserts clearly prohibits the assignment of post-loss proceeds at issue here.

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's motion to dismiss Defendant's counterclaim (Doc. No. 7) be

GRANTED WITH PREJUDICE with respect to that portion of American Family's counterclaim

based on the alleged anti-assignment policy provisions, and GRANTED WITHOUT

PREJUDICE to its resolution in arbitration with respect to that portion of American Family's

counterclaim arguing that Alpine's customers did not in fact make a valid assignment to Alpine.


Dated:  March 12, 2007

                                                   s/ Susan Richard Nelson

                                                  SUSAN RICHARD NELSON
                                                  United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing
with the Clerk of Court and serving all parties by March 27, 2007, a writing which specifically
identifies those portions of this Report to which objections are made and the basis of those
objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting
party's right to seek review in the Court of Appeals.  This Report and Recommendation does not
constitute an order or judgment of the District Court, and it is therefore not appealable to the
Court of Appeals.